796 F.2d 135
 55 USLW 2040, Fed. Sec. L. Rep. P 92,800
 FLEET AEROSPACE CORPORATION, Plaintiff-Appellee,
v.
Mark HOLDERMAN, Acting Commissioner and Chief of Securities
Div. of Securities, Dept. of Commerce of The State
of Ohio; Aeronca, Inc.; & State of
Ohio, Defendants-Appellants.
 Nos. 86-3533, 86-3536.
 United States Court of Appeals,
Sixth Circuit.
 June 25, 1986.
 
 Russell Robinson II, argued, James M. Hall, Jr. (Aeronca), Sylvia B. Robbins-Penniman, John W. Zeiger, Jones, Day, Reavis & Pogue, Columbus, Ohio, Erwin N. Griswold argued, for defendants-appellants.
 John J. Chester argued, Chester, Hoffman & Willcox, Columbus, Ohio, for plaintiff-appellee.
 Before KENNEDY and WELLFORD; Circuit Judges; and, PECK, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 Plaintiff, Fleet Aerospace Corporation (Fleet), a Canadian corporation, filed an action in the Southern District of Ohio on May 21, 1986, challenging the constitutionality of the Ohio Control Share Acquisition Act with respect to its applicability to a cash tender offer made by Fleet to acquire stock of defendant Aeronca, Inc. (Aeronca), an Ohio corporation. Other defendants in the proceeding were Mark Holderman, acting commissioner and Chief of Securities of the Ohio Division of Securities and Kenneth Cox the Director of Commerce of the Ohio Department of Commerce. The complaint sought "declaratory and injunctive relief barring enforcement" of both the Ohio Take-Over Act[1] and the Ohio Control Share Acquisition Act[2] as "invalid" and "unconstitutional."
 
 
 2
 The complaint set out that Fleet had commenced "a nationwide, interstate cash tender offer ... to purchase any and all of the shares of common stock of defendant Aeronca ... made pursuant to, and in full compliance with the federal Williams Act."[3] As described in Edgar v. MITE Corp., 457 U.S. 624, 627 n. 2, 102 S.Ct. 2629, 2633 n. 2, 73 L.Ed.2d 269 (1982), the Williams Act "requires a purchaser of any equity security registered pursuant to Sec. 12 of the Securities Exchange Act, 15 U.S.C. Sec. 78 to file a Schedule 13D with the Commission within ten days after its purchases have exceeded 5% of the outstanding shares of the security." Aeronca is a publicly traded corporation with thousands of shareholders, the vast majority of whom live outside the state of Ohio, with its principal executive office in Charlotte, North Carolina, and an aerospace manufacturing plant in Middletown, Ohio. The complaint also set out that defendants Holderman and Cox were charged with administering and enforcing the Ohio Take-Over Act, not the Ohio Control Share Acquisition Act.
 
 
 3
 Jurisdiction in the district court was invoked pursuant to the Supremacy Clause (Art. VI, cl. 2) and the Commerce Clause (Art. I, Sec. 8, cl. 3) of the United States Constitution and pursuant to the Securities Exchange Act.
 
 
 4
 The district court granted Fleet's motion for a temporary restraining order against the Ohio official defendants on the basis of the Take-Over Act and against Aeronca on the basis also of the Ohio Control Share Acquisition Act, specifically Ohio Rev.Code Ann. Sec. 1701.831 (Page 1985). At a later preliminary injunction hearing the district court permitted Ohio to intervene. Aeronca had also moved for a preliminary injunction to prevent Fleet from purchasing its shares until the latter complied with Ohio Rev.Code Sec. 1701.831.[4]
 
 
 5
 After briefing and a hearing, the district court on June 11, 1986, entered a memorandum and order setting out a statement of facts, evidentiary rulings with respect to proof submitted at and prior to the hearing, and a lengthy and detailed basis for its conclusion that the Ohio Control Share Acquisition Act was unconstitutional under both the Supremacy Clause and the Commerce Clause. Judge Holschuh accordingly denied Aeronca's motion for a preliminary injunction and granted Fleet's motion. He enjoined defendants "from taking any action whatsoever to invoke, enforce, or apply the provisions of Ohio Rev.Code Sec. 1701.831 against plaintiff" in connection with the tender offer. 637 F.Supp. 742 (S.D.Ohio 1986).
 
 
 6
 Defendants immediately requested an injunction precluding Fleet's tender offer acquisition pending appeal from Judge Holschuh's order. The district court found that defendants had failed to show a likelihood that they would prevail on the merits, but nevertheless, recognizing the "serious" and "important" legal question involved, granted defendants "an opportunity ... to obtain a review of the question before events may conceivably render such a review moot." Deciding that a "final determination of invalidity" was for "the appellate courts," and attempting to balance the "public interest" against interests of the private parties before it, the district judge restrained Fleet from purchasing Aeronca shares for twenty-four hours (so defendants could apply for immediate injunctive relief from the Court of Appeals) and further restrained Fleet's purchase until this court might rule on such application by defendants. Also, during the pendency of an appeal by defendants on the merits, Fleet was restrained from voting any Aeronca shares acquired pursuant to the tender offer.
 
 
 7
 On the day following the district court's orders and notice of appeal, Fleet filed a motion in this court for an emergency order vacating the restraints imposed upon it by the district court. That same day both Aeronca and the State of Ohio also filed motions in this court for immediate injunctive relief pending their respective appeals. Shortly thereafter, Fleet and Aeronca advised the district court and this court that a conditional revised tender offer, more advantageous to Aeronca shareholders, had been submitted by Fleet and that Aeronca directors had agreed to recommend this proposal, including a subsequent merger, to its shareholders. Accordingly, Fleet and Aeronca filed a motion in this court and in the district court for leave to withdraw their respective motions for injunctive relief pending appeal. The State of Ohio opposed the joint motion, which sought to eliminate immediately any restraint on Fleet's acquiring and voting these Aeronca shares. The district court declined to take any action, deferring to this court to "avoid any possible encroachment ... on the jurisdiction of the Sixth Circuit Court of Appeals."
 
 
 8
 This court granted expedited consideration of the matters before it and set the case for a prompt hearing. Before us for consideration are Fleet's and Aeronca's motions for an emergency order vacating the order of the district court, and later a joint motion of Fleet and Aeronca to vacate or to remand to the district court the issues with respect to injunctive relief (and the brief in opposition by the State of Ohio). We are advised that the revised tender offer has been extended to June 30, 1986. The State of Ohio seeks an order of this court setting aside the declaration that the Ohio Control Share Acquisition Act is unconstitutional and appeals from the injunction precluding its enforcement in this case.
 
 
 9
 At the oral argument counsel for all parties have requested that this court consider the expedited appeal on its merits, not merely the question of the nature, extent and propriety of injunctive relief heretofore granted by the district court and the questions of staying that action or granting further injunctive relief by this court. The parties have submitted extensive briefs on the injunctive relief issues and on the merits of the constitutionality of the Ohio Control Share Acquisition Act. Counsel addressed fully at oral argument the constitutionality of the Ohio law at issue.
 
 A.
 
 10
 We consider first whether the later developments in this case following the decision of the district court have rendered the issues moot, whether there is a live and justiciable controversy before us. Fleet takes the position that, in view of its agreement with Aeronca's management caused by Fleet's amended and increased cash tender offer and Fleet's withdrawal of the original offer, the intervenor defendant State of Ohio has no standing to pursue this appeal. Ohio, however, argues that it intends to enforce the statute in question and that it has not only the duty but also the right to be heard with regard to a district court holding, now on appeal, that the state statute in controversy is unconstitutional with the accompanying order enjoining the State from enforcing that statute. We agree with the State of Ohio that there is before us a justiciable controversy and that we are called upon to make a decision on the issues that have been presented involving the constitutionality of the Ohio Control Share Acquisition Act.
 
 
 11
 The constitutional issue is clear. See MITE Corp. v. Dixon, 633 F.2d 486 (7th Cir.1980), aff'd on the jurisdictional issue, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982); National Association of Letter Carriers v. Sombrotto, 449 F.2d 915 (2d Cir.1971); see also Thornburgh v. American College of Obstr. & Gyn., --- U.S. ----, ---- - ---- n. 1, 106 S.Ct. 2169, 2173 n. 1 (1986) (White, J., dissenting). We conclude that the State of Ohio has standing before this court to contest the district court decision that the Ohio statute is unconstitutional on its face and in its application to this dispute. Maine v. Taylor, --- U.S. ----, 106 S.Ct. 2440, 91 L.Ed.2d 110 (June 24, 1986). Following MITE, we find that since the State of Ohio has indicated that it intends to enforce the Act against Fleet unless precluded by an injunction from doing so, the issues before us are not moot. 633 F.2d at 490; 457 U.S. at 630, 102 S.Ct. at 2634.
 
 B.
 
 12
 The district court discussed in detail the meaning, intended applicability, and effect of the Ohio Control Share Acquisition Act. It analyzed the Ohio Act in conjunction with the Williams Act and concluded, first, that the Ohio Act conflicted with the Supremacy Clause, citing among other authorities for its conclusion, Edgar v. MITE Corp., and this court's decision in Martin-Marietta Corp. v. Bendix Corp., 690 F.2d 558, 565 (6th Cir.1982). Acknowledging that "Congress has not explicitly prohibited states from regulating takeovers" of the type proposed by Fleet, the district court concluded that the Ohio Act "frustrates the objectives of the Williams Act in a substantial manner." The district judge also held that the Ohio Act "impermissibly tips the scales in favor of incumbent management by requiring a shareholder vote," and by creating a delay. We agree substantially for the reasons expressed by Judge Holschuh.[5]
 
 
 13
 Judge Holschuh also decided, after a careful consideration of the implications of the Ohio Control Share Acquisition Act, that it impacted substantially on interstate commerce. He concluded that it constituted a direct regulation upon, as well as an indirect burden on, interstate commerce that violated the Commerce Clause. He cited recent decisions of similar effect with respect to other states' efforts to deal with tender offers of the type involved in this case. See Dynamics Corp. of America v. CTS Corp., 794 F.2d 250 (7th Cir.1986); Icahn v. Blunt, 612 F.Supp. 1400 (W.D.Mo.1985). We agree also that the Ohio law in question offends the Commerce Clause for essentially the reasons stated by the district court. Accordingly, we hold that the Ohio Control Share Acquisition Act is unconstitutional for this additional reason.
 
 
 14
 We conclude that Ohio Rev.Stat. Sec. 1701.831 is unconstitutional and AFFIRM the district court's judgment that the State of Ohio is therefore enjoined from enforcing it. The injunction prohibiting Fleet from acquiring Aeronca shares is set aside, as is the injunction prohibiting Fleet from voting the Aeronca shares so acquired. The mandate will issue on June 30, 1986, to permit the State of Ohio to seek a stay.[6]
 
 
 
 [1]
 The district court dismissed without prejudice Fleet's claim that sections 1707.041 and 1707.042 of the Ohio Revised Code (the anti-fraud provisions of the Take-Over Act) were unconstitutional because the claim failed to present a case or controversy. The ruling and statute is not before us on this appeal
 
 
 [2]
 See Ohio Rev.Code Sec. 1701.831 and the legislative "findings" in Sec. 1707.832, which form the purported basis for the Control Share Acquisition Act provisions
 
 
 [3]
 The Williams Act, 82 Stat. 454, codified at 15 U.S.C. Secs. 78m(d)-(e) and 78n(d)-(f), added new Secs. 13(d), 13(e), and 14(d)-(f), to the Securities Exchange Act of 1934
 
 
 [4]
 We set out the substance of Ohio Rev.Code Sec. 1701.831:
 (A) Unless the articles or the regulations of the issuing public corporation provide that this section does not apply to control share acquisitions of shares of such corporation, any control share acquisition of an issuing public corporation shall be made only with the prior authorization of the shareholders of such corporation in accordance with this section.
 (B) Any person who proposes to make a control share acquisition shall deliver an acquiring person statement to the issuing public corporation at the issuing public corporation's principal executive offices. Such acquiring person statement shall set forth all of the following:
 (1) The identity of the acquiring person;
 (2) A statement that the acquiring person statement is given pursuant to this section;
 (3) The number of shares of the issuing public corporation owned, directly or indirectly, by the acquiring person;
 (4) The range of voting power, described in division (Z)(1)(a), (b), or (c) of section 1701.01 of the Revised Code, under which the proposed control share acquisition would, if consummated, fall;
 (5) A description in reasonable detail of the terms of the proposed control share acquisition;
 (6) Representations of the acquiring person, together with a statement in reasonable detail of the facts upon which they are based, that the proposed control share acquisition, if consummated, will not be contrary to law, and that the acquiring person has the financial capacity to make the proposed control share acquisition.
 (C) Within ten days after receipt of an acquiring person statement that complies with division (B) of this section, the directors of the issuing public corporation shall call a special meeting of shareholders of the issuing public corporation for the purpose of voting on the proposed control share acquisition.
 ...
 (D) Notice of the special meeting of shareholders shall be given as promptly as reasonably practicable by the issuing public corporation to all shareholders of record as of the record date set for such meeting ... accompanied by both of the following:
 (1) A Copy of the acquiring person statement delivered to the issuing public corporation pursuant to this section;
 (2) A statement by the issuing public corporation, authorized by its directors, of its position or recommendation....
 (E) The acquiring person may make the proposed control share acquisition if both of the following occur:
 (1) The shareholders of the issuing public corporation who hold shares of such corporation entitling them to vote in the election of directors authorize such acquisition at the special meeting ... by an affirmative vote of a majority of the voting power ... and a majority of the portion of such voting power excluding the voting power of interested shares....
 (2) Such acquisition is consummated, in accordance with the terms so authorized, not later than three hundred sixty days following shareholder authorization....
 
 
 [5]
 We have reservations, however, about the district court's conclusionary statement that MITE Corp. "sounded the death knell for state control of federally regulated tender offers," if the court meant by this statement that all state regulation regarding tender offers is foreclosed. See the concurring opinions of Justice Powell and Justice Stevens, 457 U.S. at 646, 647, 655, 102 S.Ct. at 2642, 2643, 2647
 
 
 [6]
 The State of Ohio requested this opportunity in its original motion filed in this court